The court will hear argument next in Saffran v. Boston Scientific, Appeal 1515 from 2008. It appears that all six out of six distinguished counsel were able to wend their way through the snow, so I appreciate that. Mr. Dunner, the microphone is yours. I apologize for the delay. I'm trying to get organized here. May it please the court, your honors, and good morning. The problem with the district court holding in this case and with Dr. Saffran's support of it is that it's based on a totally revisionist view of the specification of his patent. Let me be more specific. The claims call for all of them for a layer of flexible material that is minimally porous to macromolecules. There's been an enormous amount of debate on what minimally porous to macromolecules means, but it is quite clear that the specification defines exactly what that means, and it defines it as meaning pores or openings, not chemical bonds, not chemical linkages, not ionic attraction or anything else. It does so in column 14, and I'll just read it to you. It's one sentence. Figure 2 displays a critical aspect of the present invention, the means for minimal porosity and macromolecular containment 17, i.e. the pores. That's followed in column 13 by saying the method by which this preferential restrainment of macromolecules is accomplished is by varying the size and number of the pores, 17, in the minimally porous sheet. What about column 8, line 15, which they're saying is an embodiment that doesn't depend on this sheet being present? Your honor, that is not an embodiment of minimally porous. In fact, that statement right in the third line of that paragraph says, regardless of pore size, they... So what are you saying, that this is an embodiment that's not claimed? Yes, that's exactly what I'm saying, your honor, because... I wonder why you concede that. I mean, I would have thought your argument was that this embodiment also requires a sheet, but that it's saying that it has this addition of the chemical bond. Your honor, chemical bond is in no way... I think you've got a problem. If there's an embodiment here that is... Your theory has to be that it's not claimed. Your honor, I don't think we have a problem with due respect to your point. I think that this specification has defined minimal pore size. It's defined it in terms of pores. I read you two statements in the specification where it defines it in terms of pores. In the statement right above the paragraph you're looking at in the second line, it says that for the purposes of this invention, the pore should be small enough to restrain molecules greater than around 500 Daltons. It's telling you that the key is pores, and it goes on to say, the device can be manufactured in such a way to vary the pore size depending on the molecules one would like to restrain. There are lots of cases in which you disclose embodiments and don't claim them. I argued one before an en banc court, Johnson and the court held that I had an embodiment disclosed which was not claimed and therefore was dedicated to the public. That's exactly the situation here. This patent over and over again... This other embodiment is dedicated to the public? Pardon your honor? The other embodiment is dedicated to the public? No. This particular embodiment was not claimed because the claim is defined in terms of pore size. What that means is, the definitions I read you before talk about the pores. This embodiment is not related to the pores. It's related to an ionic charge. The specification talks about chemical bonds. There's heavy reliance by Dr. Safran on chemical bonds. The specification does not tie and discusses chemical bonds in terms of reaction rate, in terms of release rate, and in terms of specificity, neither of which has to do with macromolecules. It sounds like your argument so far has been one of claim construction, that express claim terms should be given the meaning as was that there was an express disclaimer of subject matter. Your honor, that is the second argument I'm going to make. That was a heavy focus of our brief, so let me go into it. Our position is that there was a clear disclaimer in this case of a structure that has large holes, large pores, such as the stents involved in Boston Scientific's Taxus stent. The specification continually criticizes prior art structures having large pores that permit healing macromolecules to come through them. It does so in the background of the invention when it discusses the Tormala and Schoenberg and Scott patents, and it does so in the description of the preferred embodiments. It actually criticizes prior art products. These are two completely separate independent grounds that would justify reversal. Exactly, your honor. If we agree with you on either, we don't need to reach the other. That's exactly right, and there's still a third one, which I'll get to in a second, dealing with material release means. Now, Dr. Safran tries to minimize the disclaimer by saying, well, all they talked about were metal stents. They didn't talk about stents that are coated, drug-eluting stents, as in this case. I submit that that is a distinction without a difference. If you've got a layer that tracks the stent with large openings and large holes, it presents the disclaimer. Pardon? Where's the disclaimer? The disclaimer is criticizing- In the prosecution history or in the spec? On this issue, in the material release means it's in both. In this case, it's in the spec. In this case, there are continuous statements that disparage the column 20. Both the Gian-Turco Roche-Cook stent and the Well stent are designed expandable, and the mesh holes 27 open when they are deployed. Because the smallest holes are tens of microns in diameter, both cells and large micromolecules are free to move through them. And it goes on, it goes on not only there, but it goes back to column 3 and column 4, where in column 3, the critical feature of these devices is that they contain pores large enough to permit cells to grow into them. And then it goes on, it says macromolecules produced by the fracture are free to exit in the interfragmentary space and pass unhindered into the surrounding tissues. And then when he discusses Schoenberg, he talks about a critical aspect of minimal porosity. As I said, minimal porosity is defined in terms of pores. Now... So you're essentially asking us to read the specification as if it said, the heart of my invention is to retain the macromolecules provided by the healing tissue in the site of the healing tissue and not let them escape away from the healing tissue, so they can accentuate further healing. Through the use of minimally porous openings. That's exactly right. Mr. Dunn, is the dispute here between the sides, it seems to me, the other side is pointing to a diagram on page 9, which depicts the accused device as a layer surrounding the strut. And it seemed to me that part of the issue is joined here because their position is the accused device is a layer over the strut. And I assume your position is the accused device is a layer over the entire stent structure. Am I right about that? Is that where the issue is joined here, that they're taking the strut and they're looking just at a single strut? And that is a critical aspect of the debate between us and their argument that all you do is look at a strut is taking the claim language and instead of saying a layer of minimally porous material, they're saying a portion of the layer and their theory doesn't work because claim 9, there's a metal strut under that minimal portion. If you just look at one strut and forget the discussion in the specification that says if there are holes, healing macromolecules will go through them. And that problem exists both in a coated stent or an uncoated stent as far as the specification is concerned. But claim 9 talks about the method of claim 8, which is one of the independent claims, whereby the layer permits the through passage of small molecules such that the device is non-toxic to the damaged tissue. The reason it's minimally porous is that it's not, it permits some molecules to come through, small molecules, which are beneficial. And if all you do is look at a strut and say, you need to just see whether that strut is minimally porous, you've got a metal piece under that strut. It won't permit small molecules to go through. I would have thought your point is that making the strut impermeable wouldn't accomplish anything. That's exactly right. But the problem with the disclaimer that I'm having is that if there is a disclosed embodiment which doesn't fall into this category, how can the specification be a clear and unmistakable disclaimer? That's a real problem for you. Your Honor, it shouldn't be a problem and let me explain why. If the there is an embodiment of minimal, I'm giving you a hypothetical, which I ask you to accept. As you have, as you did in the previous argument, if you had a spec that said, I have, my claims are minimally porous. Minimally porous means restricting through the use of pores, through the use of openings. And then you had another paragraph which said, another embodiment is one that isn't minimally porous, but you can also restrain that way. You can use ionic charges or you can use hydrophobic interactions. Now, I would suggest that in that situation, with that kind of a statement, I wouldn't think you should have any problem because the spec is telling you the embodiment that is claimed minimally porous is defined here. And this is what I mean by minimally porous. And when I talk about ionic charges, I'm not talking about minimally porous. Now, my hypothetical is really not a hypothetical because that's exactly what this specification says. The specification in the part that you looked at in column eight says, regardless of pore size. I've just gotten through telling you that in a previous portion of the specification, they have defined minimally porous as relating to the size of the pores. Now, I think that's a clear and unmistakable difference between the two. And I'm suggesting that there are cases, and I mentioned before, I argued unsuccessfully, I lost one to 11 in Johnson and Johnson because there was disclosure that was unclaimed and the court held that was dedicated to the public. Since Johnson and Johnson though, we haven't had any cases that really were predicated on there, have we? Since then? Yeah. No, when you lose 11 to 1, it didn't. No, but saying that you don't claim undisclosed, I don't recall seeing any cases in which we relied on the fact. No, I don't know, Your Honor. I cannot cite any case since then. But I can remember that case. It's indelibly ingrained in my head because I argued it unsuccessfully. And the point is there can be disclosure, which is unclaimed. And I suggest. But there's a presumption against it. At least there's a presumption against it, right? Your Honor, if there were a presumption, I would. Is there a presumption against it? I thought there were lots of cases that said there's a presumption. There's a presumption that the disclosed embodiments are claimed. There may be. And if I had a situation where I had two embodiments and one of them, and I'm saying there's a disclaimer, and one of them was covered by the language I'm talking about and the other one was not, I'd be making a different argument than I'm making now. I don't think that's our case. I think our case is one where they expressly say this is not minimally porous, which they've defined in another part of the specification. And so with due deference to your point, that is my response to that point. Now, I should note that there's no dispute that healing macromolecules and the paclitaxel, which is the treating molecule in the taxistent, are small enough to pass through the openings in a stent. There's no dispute about that. So if I'm right that minimally porous has been defined as having pore openings, which in effect are smaller than these molecules, and if I'm correct in saying there's a disclaimer when you've got these openings, then I submit that there's no substantial evidence to support the jury verdict. I'd like to just go into the third part, and that is a separate independent basis for BSE prevailing, and that's material release means. The district court and Safran arguing in support of it argue that the corresponding structure are chemical bonds and linkages, and I submit that there is nothing in the specification and everything in the specification against it, nothing supporting that. The chemical bonds and linkages are tied to rate of release and to specificity, neither one of which has to do with directing, with targeting or directing the molecules. And in fact, the specification is replete with statements that two additional structures are necessary for the directionality provision. One of those structures is the minimally porous layer, and the other one is coating that minimally porous layer on one side, and there are sites all through it on blue 20 and 21. There's a list of sites supporting that. Every embodiment, every embodiment in this spec that deals with directional release has coating on one side, and if there are any doubts, the statements in the prosecution history are really compelling, and I will just read them to you. It is on page 9740 and 9741, and it basically says, it's talking about the Scott patent, and it says, the critical concept missing from my designs is directional drug delivery. The feature of direction delivery, which I disclosed in my patent for, and he describes the title 262 patent, provides many benefits that are new and unexpected from that of Scott et al. The key is that medicines are contained by the minimal porosity of my device, by the minimal porosity, and as I said, chemical bonds and linkages don't target anything. They just release. Once they're released, there's nothing in this patent that says they will go toward the vessel wall. So your argument in part then is that the accused product has the medication on two sides, considering the inner portion of the stent to be one side, and the outer portion of the stent is the other side. That's exactly right, your honor. It is completely coated on four sides, and one of those sides has access to the blood stream, and the other one is closest to the vessel wall, and this says, suppose one wanted to apply a medicine directly to a blood vessel wall, but keep it out of the general circulation. With the sheath of Scott et al, this would be impossible, because their polymer is open to both the blood stream and the wall of the vessel, exactly as ours is. Now, Safran says, well, it doesn't matter, because in fact the paclitaxel is restrained in the taxa stent, but the answer is, to the extent it's restrained, and there's evidence to support this, it's restrained not by the pore size, because the openings. It is restrained by some other mechanism, and this patent does not tie chemical bonds or linkages to directionality. On the contrary, it ties over and over again, coating on one side, in which every embodiment coats on only one side, and to a minimally porous sheet. So I submit that it goes on. My device, on the other hand, keeps the medicine next to the vessel wall, because it can't get through the minimally porous membrane, or in our case, it's on the other side of the membrane. So it accomplishes exactly what Dr. Safran says he doesn't want to happen. The claim starts out using the term layer. I'm curious why you don't simply argue that a mesh is used in this patent. Your Honor, we argue that below. We argued that layer means a sheet. Why aren't you arguing it here? Why aren't I arguing it here? Yeah. I'm not arguing it here because I didn't want to clutter the argument. To be frank with you, we considered three arguments. There is a statement in the specification describing an element. It's in column six. It says the invention is to be provided as a flexible sheet, spray, or tube that the surgeon in the operating room can staple, suture, or otherwise. And we didn't want to get involved in a debate, which is what happened below, that because you have an enumeration here, only one of which is sheet, and the other ones of which are spray and tube, therefore, somehow, we have multiple embodiments, and this is just one embodiment. On the other hand, the spray creates a film, which once it's applied, seems to look and work like a layer. And the tube, likewise, suggests a continuous surface, which seems to be the opposite of a mesh cylinder, a normal stent. Your Honor, I agree completely with you, and I would be happy to have the court rule on that basis. But I'm explaining to you. Well, let me give you another idea then. I'm receptive to every idea you can provide. In claim one, and I didn't see this argument made, there's a reference to layer in several of the passages, and then we move on to a device. And I would have thought it might be helpful to your case to say that a layer and a device are not necessarily coextensive. The device, it says the device comprising a layer, but then it goes on finally in the last passage to talk about the device being capable of substantially restricting the passage. And so if device is coextensive with the entire structure or the stent, then clearly the accused product doesn't meet this limitation. Your Honor, you must have been a fly on the wall of our pre-hearing conference. We discussed that. You're exactly right. That argument can be made. There are two clauses here. One is the minimally porous clause, and the other one is the device, which doesn't talk about a layer, it doesn't talk about anything smaller than that, being capable of substantially restricting the through passage of at least one macromolecule there through. That argument is a viable argument, the one that you just pointed out. And again, I think that bolsters our point. There are only so many arguments one can make in a brief, and we made what we felt were the strongest arguments. But that point is a reinforcing point that we can rely on, because that too, the disclaimer, applies both to that and applies to the minimally porous clause. So the point you made would be further reinforcement of our position. All right, let's hear from Mr. Hoffman, and we'll give you at least three minutes of rebuttal at the end. Mr. Hoffman, you can be assured that you will not be cut off at 15 minutes. We gave Mr. Gunner about eight extra minutes, and you'll have the same. May it please the court, I'm Gary Hoffman from Dickstein Shapiro, appearing on behalf of Dr. Troublesome. In line 15, I wonder whether this language on which you rely really is an alternative embodiment, or whether that embodiment also requires a sheet. That's what's troubling me here. And that chemical bonding thing is reflected in figure 3a, is that correct? Your Honor, what you point out in column 8 is one of several places in the patent where it talks about regardless of pore size, both in the patent and also the prosecution history. But this chemical bonding is shown in figure 3a, is that correct? Yes, that is one example of chemical bonding that's shown in one of several different embodiments. Let me tell you what your problem is. If you look at figure 3a, it shows item 1, and if you look at the definition of item 1 in the reference numerals, that's a sheet. So this embodiment shows a sheet, doesn't it? In this particular embodiment, it does show a sheet, or it refers to a sheet. In other embodiments, it talks about a sprayed on layer, it talks about a thin film. There's many different embodiments. But what about Chief Judge Michel has pointed out that with a sprayed on layer, for example, you end up with which is like a sheet. What's the problem with that? Well, first of all, BSC in its brief indicates that the layer in their reply brief at page 25, that the layer is not a sheet. But the problem with trying to call it a sheet is this is a sprayed on layer. You could take a look at any of the struts of this den and refer to what's as being a sheet or a layer. It's a layer that's wrapped around or coated onto the strut, just like the thin metal rod and the thin film. The device is the stent. No, actually the device is not a stent. What the claim 1 and claim 8 and 11 would include a stent, not limited to a stent. One of the embodiments is a stent, but the word stent and the reference to a stent does not patent are directed to a layer. In fact, Boston Scientific, I was surprised to hear the comment that they think it is that the claims are directed to a stent or to a wire mesh stent because in their briefs they indicate that no, they agree that the invention is a layer and not a stent. That is exactly what we have here. As they've indicated in their brief at page 9, what's being accused of infringement is the drug polymer layer that's coated onto the struts, not the stent itself, it's the layer. Wait, wait, wait, not necessarily coated onto the struts, the layer could be the sheet. Throughout the specification with only a couple of claimed examples, it's referred, this layer is obviously the sheet, this minimally porous sheet, right? In some of the examples, it is referred to as a sheet in some of the embodiments, but not in all of them, Your Honor. Which ones is it not referred to as a sheet? Your Honor, some of the embodiments are, if you look at 6A as one example, if you look at 5D, I'm sorry, figure 6A. I don't believe it's referred to as a sheet there. If you look at 5D, it's referred to as a thin film, and that would be the rod that's there. Your theory is a thin film is not a sheet? That is correct. In fact, a thin film would be sprayed onto the rod. That's 6A. Oh, I'm sorry. 6A is where it shows the spray, and 5D. But in 6A, the spray creates a film, which you say isn't a sheet. It's a sprayed layer. It's referred to as a layer. Yes, it would be like a film. A film is not a sheet, is your theory? The thin film would not be a sheet. You'd wrap around something. Where else? If you look at 5D, it's referred to as a thin film, the layer that's there. This is, yes, the layer that's shown there, and this would not be a sheet that's wrapped around the metal rod. This would be similar to the strut. Can I just clarify? Your theory of infringement depends, then, on our construing each strut separately, right? Actually, it doesn't, but we believe that that is what's involved here. Well, if you look at the device or the layer on the entire stent, then they're clearly holes. They're clearly openings. So the only way I think you could come up with a viable theory on infringement is to suggest that we look exclusively on every strut individually, and not to the stent entirely, which is a combination of struts. I believe what your honor is talking about is going back to BSC's argument of minimally porous requires small pore sizes, or depends on pore sizes. And if I'm correct in that, then our position is that the layer and the control of the release of the drug is not by pore size. And there's statements throughout the patent, regardless of pore size. But what does it mean, the final passage? Let's look at the claims. The device being capable of substantially restricting the through passage of at least one type of macromolecule there through. The device, which is the layer with the chemical bonds and linkages, or the material release means, is what forms a device. It's not the stent that's claimed there. It's just the layer with the material release means, and a first surface and a second surface. The layer on the strut. Excuse me? The layer on the strut. Is that the layer you're referring to? The layer itself, and yes, part of that layer is the layer around each strut. That is correct. That's part of the layer. But when it says through passage... I understand what you're saying. You're saying two things. You're saying that the individual strut is a mechanical layer that restrains the pores. That seems to be a difficult argument for the reasons that Judge Prost has just articulated. Your other argument is you don't need mechanical restraint at all. The chemical restraint is sufficient. If I applied the first, I apologize. We're not talking about whether or not the strut restrains the treating material. It is the layer that, by chemical bonds and linkages, causes the restraint. For example, if you look in the patent prosecution... Judge Prost is correct that the restraint provided by the strut can't be the layer that's referred to here. The mechanical restraint... It is not the mechanical restraint that's provided by the strut. If I indicate it differently, I apologize. Okay. So the question is, can we read this specification to refer to chemical restraint as opposed to restraint by a mechanical sheet, right? Absolutely. It can be. And that is the way we submit it should be read. But it's Paclitaxel's own chemistry and not the chemistry of the device that keeps the drug in the tissue, right? How is the device capable of restricting the through passage if it has holes when you're dealing with Paclitaxel, it keeps it in the tissue through its own chemistry? When the drug is released, and if you look at claim one, what it says is the layer having material release means. Throughout the patent, it talks about the release being controlled by the chemical bonds and linkages. And in the patent prosecution... Which claim were you referring to? I'm sorry. Claim one. Which portion of claim one? Line 40. Well, look at line 46. The device being capable of substantially restricting the through passage of at least one type of macromolecule. Yes, if I may say... What is the device here? Well, if I may take the two clauses in conjunction, I can respond to your question. The material release means the chemical bonds and linkages that only when those bonds are broken is the drug released. That's the treating macromolecule. Okay. When you go down to the last part, line 46, it says the device. The device there is the layer of flexible material with the material release means in a first and second surface being capable of substantially restricting the through passage of at least one macromolecule. That's the treating material. Since it's only released in the area between the layer, whatever the size of that layer is... The layer on the strut you're referring to. Well, in this case, in the accused product, be the layer on the strut and only from the side facing, and that's immediately adjacent to the damaged tissue, then it is kept in that area. It's directionally delivered and it won't pass back through. That layer won't pass around the sides. It's kept in that area. It's not talking about anything else. It's not talking about the openings in a mesh dent. And in fact, what I submit you need to focus on here is that claim one is only talking about the treating material. It's only talking about at least one type of macromolecule. That's the treating material. There's a lot of references in their disclaimer argument, and the disclaimer argument is dependent upon saying that none of the endogenous macromolecules, the macromolecules coming from the tissue, none of those can be released. All those need to be restrained. And there's many embodiments in here, such as the very cover of the patent, which shows an embodiment where endogenous macromolecules would be released. How do you deal with the prosecution history, 9740 to 41, which seems to say, clearly, the key is that medicines are contained by the minimal porosity of minorities. How do you get around that? The minimal porosity is a functional statement, and actually what it says, Your Honor, is... It's not referring to a sheet. It's not referring to a sheet. And in fact, if you go to 9738 of the appendix, and this is in just a couple pages before in the same response, it says this device is capable of releasing medicines by chemical bonds, whereas the malleable fracture stabilization device with minimal pores, which was the 262 patent that's referred to, requires micropores to release medicine. This patent is depending on chemical bonds for the release. Only? It is relying on the chemical bonds and that the layer... Only chemical bonds? Well, what it's relying on is chemical bonds and that the layer have the function... Your theory is that there has to be a chemical bond in each embodiment? Each, yes. The sheet can't ever do it? Well, the drug is held to the layer. A sheet that provides a mechanical restraint of the macromolecules is not within these claims? No, because what you need is you need something to hold that treating material inside using the... If it is a sheet, to hold it to the sheet. And only when that's released, when those bonds are broken, is the drug released. This is the problem with the argument that the patent excludes drugs on both sides, both the side or both surfaces, both the surface facing the damaged tissue as well as the opposite surface. The issue is not where the drug is present. The issue is where is the drug released. And only if the chemical bonds are broken and it's only broken where it's adjacent to the damaged tissue, only where it's broken is there release of the drug. It's not released on the other side and that's what distinguishes O for Scott. The fact that it's not released on the other side. Whether or not it's present doesn't matter. And Scott, it released in all directions, got washed away. What Dr. Safran wanted to do and did disclose in his patent is that you only release it on one side, the surface that is adjacent to the damaged tissue and it's only when those bonds are broken does a release occur. And that layer has to be made of a material that is minimally porous. That's not talking about the size of the pore holes. That's talking about a function and that the material, the treating material, once it's released, will not pass back through that layer and that it will not be able to be washed away into the bloodstream. And Mr. Donner argued that the treating material and what I'll call the healing molecules were two separate things addressed by the patent claims and that retention of both at the injury site was required. So even if we were persuaded and essentially adopted your argument with respect to the medication, what's your response with respect to the healing molecules escaping from the injury site on the artery wall? I have several responses. Dr. Safran has several responses, Your Honor. First, if you look at Dependent Claim 10 on A172, it says the method of Claim 8, wherein molecules produced by the damaged tissue are substantially restricted adjacent to the damaged tissue. So that issue that they're talking about of controlling or restricting the movement of what he calls the healing macromolecules, it's the endogenous macromolecules coming out of the tissue, is actually only in a dependent claim, not in the independent claims. Second, the argument as I understand that they're making is that all of the endogenous macromolecules must be restrained. And that simply is inconsistent with many embodiments in the patent, such as 4B, which is on the very cover of the patent. It would also be inconsistent with Figure 5B. And in fact, in 5B at A140, it shows the drug actually coming off, the treating material, coming off majority of it toward the damaged tissue, and very little of it, next to none of it, coming off toward the healthy tissue. The whole purpose of this, the primary purpose, and it's replete throughout the patent, is the treating material. The healing macromolecules, I'm sorry, the endogenous macromolecules, which is really what they're called, yes, in some embodiments it talks about restraining them. But that's not true in all the embodiments, and in many of the embodiments, they would be released, they would not all be restrained. What about Claim 1? Why should we accept the idea that Claim 1 is only dealing with the medication and not the endogenous macromolecules? Because Claim 1 talks about, number one, a treating material. If I can go back to Claim 1. It says that the layer is minimally porous to macromolecules, then it goes down, the layer having material release means for release of at least one treating material, then it goes down and says, and there's a part you refer to, Judge Prost, the device being capable of substantially restricting the through passage of at least one type of macromolecule. Not all macromolecules, that's the treating material. Why doesn't the first mention of macromolecules, as you've just recited, sequential parts of Claim 1, include the endogenous molecules as well as the medication macromolecules? Of course, what it's saying in Claim 1 doesn't say that the entire layer or the entire device must restrict endogenous macromolecules. If you look at Claim 1, it says... That's not my question. My question is whether the first appearance of the word macromolecules shouldn't be read as including both types, both the endogenous and the medication. If we can look at Claim 1, though, what is actually being blocked in Claim 1? It says the flexible material that is minimally porous. The material is the coating. That's the material. And the function, and that's functional language and is an adjective that describes the material. And it's saying that material, the function of it has to be that it substantially contains the macromolecules on one side. It's very hard to refer to porosity as a function as opposed to a description of the material that has particular pore sizes, isn't it? Well, I'm not referring to porosity. What I'm referring to is minimally porous. And minimally porous is what's the function of that material. And minimally porous is that it substantially prevents permeability. It limits the amount that can pass through. And that is why we submitted that when the court said it should be given its plain meaning that that was appropriate. But you haven't shown us any plain meaning that equates porous with anything but a kind of mechanical restraint. If we can go back to column 15, line 55. But you said common meaning. Where's the common meaning? Where's the dictionary definition that uses porous in the sense that you say it should be? If you go to the dictionaries, there's many dictionaries and I haven't checked them all, obviously. Many dictionaries refer to porous as permeable. And minimal, obviously, meaning only a small amount of being permeable. You didn't bother to cite any of those in your brief, right? No, we did not rely on dictionary definitions. But if we go to the patent itself, it talks about... But for you to say common meaning and then not cite anything to support it, that's a little problematic, right? We don't think it is because we think it's a term that doesn't need any special definition. And when you go to the patent in column 15, it talks about... This is at line 56. Minimally porous is described above such that it is capable of substantially containing macromolecules on one side of the device. Then your argument depends on our accepting the idea that minimally porous is a purely functional definition, not a definition of structure, right? We submit that it is a functional definition. Only functional. Functional and not at all structural. That is correct. We submit that it's not a structural definition. You're also saying that not only is it purely a functional definition, but that it's not referring to a mechanical function, it's referring to a chemical function, right? No, we're saying... We're saying that it's not achieved by a mechanical function. It's not a mechanical function. I'm sorry, by a mechanical structure. It's not a mechanical function. It's a chemical function. Well, it's not a mechanical structure. That it's achieved, the way in which it's achieved... You can't have it both ways. Either it's only functional or it's structural. And if it's only functional, then it seems to me you have a big problem. It's our position that the material itself has to be minimally porous. In other words, only a small amount, a minimal amount, passes through it. And that's all it's talking about. It's not talking about the structure of the device. It's not talking about port-sized openings. It's not talking about a mechanical structure. It's what is the material made of? What is the function of the material? And that function is that the material is minimally porous. That has... It's our position that it has nothing to do with port size. And throughout the patent, such as you pointed out in the beginning... What are you suggesting then that minimally porous means? It has some pores of unknown size, but it has very few of them? We submit that minimally porous only means that the material... that the treating material does not substantially pass through that material. That it's substantially impermeable. Not totally, but only a small amount can pass through. It has nothing to do with the size? Of the pores? No. It's regardless of pore size. And throughout the patent, it talks about regardless of pore size. Throughout the patent? Where? There's on column 8, there's a reference to that. Where else? Column 14. Where? If you look at... I'm sorry. I had column 8 there. Column 14 lines 30 through 33. It says basically there, it's talking about the ionic charge based on electric charge rather than their size. And it's talking about the molecules. Also, if you go down into the bottom of column 14, it talks about controlling the release by chemical reactions instead of pore size. If you look at column 22, up at the top of 22, it says the method of medicine released by chemical bonds is also a highly significant improvement. What line is this on? I'm sorry. What line is this on? It starts at line 6 and goes through line 14. And it begins the method of medicine released by chemical bonds. Then when you go further down in that section, rather than relying on random efflux of molecules from various size pores providing a surprising consistency to drug delivery not before seen in the prior art. So it's talking about relying on chemical bonds versus pore sizes for controlling the release. Mr. Dunner made a sharp distinction, as I recall, between controlling the release of the medication and retaining it in the area of the injured tissue. That is, preventing it from escaping to some other location. You seem to only be focusing on the release of the medication. Because the clause that he's saying that there's a disclaimer is that the means for... I'm sorry. Get the exact language. Material release means he's trying to read into that that one of the additional aspects in addition to chemical bonds and linkages has to be that there be no openings in the layer. And that that's an additional feature that must be present in order to obtain material release means. And we submit that it's not an additional feature. When you get down to a subsequent portion, and that is what Judge Proced referred to in lines 46, substantially restricting the through passage of at least one type of macromolecule there through, that's indicating that the drug once released is not passing back through that layer, through that material. And that's because the material is made of... that the material is minimally porous. But we're saying that that doesn't have to do with pore size. We're not saying it can't be pore size, but we're saying that does not have to be pore size. Is there any figure in this patent that doesn't show a sheet? We submit that claim 5D does not show a sheet. Figure 5D, I apologize. Figure 5D and figure 6A do not... and figure 6B do not show a sheet. It talks about a spray. It talks about a thin film. And the thin film on the rod would be equivalent to or similar to what they have as what they have is their layer that's coated onto each of the struts. That thin film that's there is coated onto the rod. And that's exactly what they're doing in their product. Which one? Figure 5D. What's the difference between whether you wrap the bone supporting rod with a layer of a flexible material versus you create the layer on the rod by spraying? When the spraying operation is over, you've got exactly the same thing. You've got a continuous sheet-like or layer-like enclosure around the entire rod. And what we're focusing on, what we submit the claims are focusing on is that layer that's there. And that would be the same as when they coat the struts of their stent. That layer that's coated onto each strut would be identical to what's in 5D. But 5D shows the layer all the way around facing the bone, doesn't it? It does show it all the way around facing the bone. However, in their situation, their layer that's coated onto their struts is all the way around. Wait a moment. In 5D, there's item 1 there, right? And the specification specifically defines item 1 is a sheet. So this figure has a sheet in it, doesn't it? It's a thin film that's coated on. And it's referred to as a sheet, is it not? Yes, it does. But we submit that when you look at the layer, what they're trying to say is that the sheet has to be a continuous sheet that covers up all the openings in the stent. Our position is when you look at the layer, whether you want to call it a sheet wrapped around each strut, a layer that's coated onto the strut, which is what it is, which is the same thing as 5D, it's a layer that's coated on to the metal rod. That that is the layer we're talking about. This claim doesn't say that there can't be openings or in the entire layer or the entire device. The concept of blocking the endogenous macromolecules, which is what they're talking about, has to be read into here, would be inconsistent with other embodiments such as in figure 4B. So then, to accept your last argument, don't we have to, in effect, decide that the device of claim one is each strut in the accused stent? Actually, Your Honor, I don't think that has to be decided because if the claim construction from the court below is not overturned, then Boston Scientific does not challenge that there's infringement. The issue here is whether or not the claim construction should be overturned and whether or not there's a disclaimer. The issue of the disclaimer was specifically raised below and rejected by the district court. The issue of if the claim construction was correct and if there is no disclaimer, then there is no challenge as to the issue of infringement. Well, I don't think that answers my question. My question was whether, to accept your argument, we have to treat the strut as being the device mentioned in claim one. No, I don't believe you do because it's the layer that's the device and it's the layer with the treating material and the material release means for releasing the treating material. The strut, the stent, is not in claim one. And in fact, if you try to read that into claim one, it would eliminate many of the other embodiments talking about uses for chemotherapy, uses for bile ducts, uses in bones and many other devices if we try to say that claim one requires a strut or a metal rod. Now, it's consistent with that, but we submit that you don't have to read it into claim one nor should it be read into claim one. It's only the layer. So, are you saying that claim one requires neither a stent or other total device nor a strut? That it just requires a layer on anything? That is correct. And a layer with the properties and with the elements that are set forth in claim one. And that that's all that's required. And that can be a coating material as we see in 5D, in figure 5D. And it doesn't have to be a sheet? Does not have to be a sheet. But that may get into an issue of semantics. Now, Boston Scientific has agreed in its reply... Semantics? Item one here defines this as a sheet and every one of these embodiments shows a sheet. That's your problem. The issue is if it is called a sheet, it's still coated around each of the struts. So, there is a layer and also a sheet. You can have a sheet of wire mesh which would have openings in it. And that's still a sheet of material, a sheet of mesh material. So, the word sheet does not mean that there can't be openings in that sheet. The material that makes up the layer or the sheet has to be minimally porous. And it has to hold treating material to it and control the release of that treating material through chemical bonds and linkages. And the treating material, once released, can't pass back through that material. But whether it's a sheet or a layer or whatever you call it, doesn't mean it can't have openings of various sizes. But that's not what causes the release. Well, except that sheet says that it has to be minimally porous. So, but it's the claim talks about it. Correct. Isn't that correct? You look at column 12 in the reference numerals. Number one, it says single layered, flexible, minimally porous sheet. That's item one in the figure. And in some of the embodiments, that is true. However, when it gets down to the claims, it's the material that makes up the layer that has to be minimally porous. Mr. Hoffman, is there a problem of inadequate notice to competitors if we deduce or accept a construction that the layer doesn't have to be anything like a sheet? Then the scope of the patent is extremely hard to assess. And whether the product I make infringes or not would be extremely difficult to know. We submit that there's not a problem with inadequate notice because each of the layer itself is what's talked about as being minimally porous. And whether you view on, let's take the Stanton embodiment that's being accused here, what's coded on each of the struts as a layer or you want to call it a sheet, it is still that layer that we're talking about. It's that material that we're talking about. And it's the properties of that material. And it's the fact that there's material release means by chemical bonds and linkages so as to control the release of the drug from that material. So you're now agreeing that a layer has to be a sheet, right? Excuse me? You now agree that a layer has to be a sheet. I have not agreed, but I'm saying even if it's, you refer to it as a sheet. Is a layer a sheet? We don't think a layer has to be a sheet. But even if you say what's on figure 5D, the thin film that's coated onto the rod, call that a sheet, it doesn't change the position. Figure 5D calls it a sheet, doesn't it? There is a reference when it says one, that one is a sheet, yes. All right, let's hear some rebuttal and then we'll struggle further with this very interesting case. Mr. Dunner. My notes are not very good, to which I apologize. I think the point, the question raised by you, Chief Judge Michel, about the public notice function is a critically important issue in this case. One reading, the Safran patent, reads it as keyed not to chemical bonds and linkages. The passages quoted by Mr. Hoffman in which he referred you, I think, to column 14 and some other column, talk about release rate, talk about specificity. It nowhere relates chemical bonds and linkages to restraining. What the patent talks about is pores restraining. And if, as Mr. Hoffman says, you just look at this layer disembodied from the entire structure, you end up with a ridiculous situation. You end up with a layer which looks exactly, if all you had was a negative of it, you'd see what looked like a stent. It has exactly the same holes, the same openings. And all the concerns in this patent about openings and about non-stent devices which have openings, permitting healing macromolecules and treating macromolecules to go through, to tell the public that what you're concerned about are these openings, these holes. And for the life of me, I don't understand the focus on layer disembodied from the rest of the patent. The public is not reading this as a disembodied disclosure. It's looking at it as a complete disclosure. As far as the minimally porous limitation is concerned, that clearly is structure. If you had Swiss cheese and you described it as having pores, you would describe that as structure. If you described it as porous, you described it as structure. If you describe it as minimally porous, it's still structure. It may be minimal in terms of how much, how little, but the patent tells you what it is. It's less than $500, no greater than $500. Now, the fact is that I think the focus on sheet, I think the point is it is undeniable that all of these materials are sheet. The coiled surface, the spray, you end up with a sheet. However, you define it. Now, there's a reference to what material is restrained. I suggest that the patent makes absolutely clear it's the healing macromolecules and the treating macromolecules that are restrained. In fact, here's a statement in column 20. This invention provides the means to restrain the macromolecules elaborated by the healing tissue as well as the ability to restrain any number of medicines in the space adjacent to the injured wall. And also in column 20, it says, from the above discussion, the reader will note the ability to restrain the macromolecules elaborated by the healing tissue is an exceedingly important feature. I mean, this patent reeks with statements of both kinds of macromolecules being restrained.  and we take the appeal under advisory. Thank you, Your Honor. Thank you, Your Honor.